**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, SIERRA CLUB, FRIENDS OF THE EARTH U.S., WATERKEEPER ALLIANCE, INC., and MONTANA ENVIRONMENTAL INFORMATION CENTER,<br>Plaintiffs,<br><br>v.<br><br>U.S. ARMY CORPS OF ENGINEERS, and LIEUTENANT GENERAL WILLIAM H. GRAHAM, JR.,<br>Defendants<br><br>and<br><br>NWP 12 COALITION, Movant-Defendant-Intervenors. | Civ. Action No.<br>1:26-cv-2571 |
| ALABAMA RIVERS ALLIANCE, BLACK WARRIOR RIVERKEEPER, HEALTHY GULF, OGEECHEE RIVERKEEPER, and SAVANNAL RIVERKEEPER,<br>Plaintiffs,<br><br>v.<br><br>U.S. ARMY CORPS OF ENGINEERS and LIEUTENANT GENERAL WILLIAM H. GRAHAM, JR.,<br>Defendants<br><br>and<br><br>NWP 12 COALITION, Movant-Defendant-Intervenors. | Civ. Action No.<br>1:26-cv-2623 |

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE BY AMERICAN GAS ASSOCIATION,**
**AMERICAN PETROLEUM INSTITUTE,**
**INTERSTATE NATURAL GAS ASSOCIATION OF AMERICA, AND LIQUID ENERGY PIPELINE ASSOCIATION**

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES .......... ii

EXHIBIT INDEX .......... v

I. INTRODUCTION .......... 1

II. STATEMENT OF INTERESTS .......... 3

- A. American Gas Association .......... 4
- B. American Petroleum Institute .......... 6
- C. Interstate Natural Gas Association of America .......... 7
- D. Liquid Energy Pipeline Association. .......... 8
- E. Plaintiffs' Complaints .......... 9
- F. Prior Challenges to NWP 12. .......... 9

III. ARGUMENT .......... 11

- A. The NWP 12 Coalition Is Entitled to Intervene as of Right. .......... 11
  - 1. The Motion to Intervene is Timely. .......... 11
  - 2. The Coalition Has a Direct and Recognized Interest in NWP 12—the Subject of this Action. .......... 13
  - 3. The NWP 12 Coalition's Interests May be Impaired or Impeded by the Disposition of the Litigation. .......... 16
  - 4. The Current Parties Do Not Adequately Represent the NWP 12 Coalition's Interests. .......... 17
- B. Alternatively, the NWP 12 Coalition Should Be Granted Permissive Intervention. .......... 19
- C. The Requirements of Rule 24(c) Are Satisfied. .......... 20

IV. CONCLUSION .......... 21

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Arizona v. California*,
460 U.S. 605 (1983) .... 19

*Cabinet Mountains Wilderness v. Peterson*,
510 F. Supp. 1186 (D.D.C. 1981) .... 14

*Clean Air Council v. EPA*,
181 F.4th 1292 (D.C. Cir. 2026) .... 15

*Conservation Law Found. of New England, Inc. v. Mosbacher*,
966 F.2d 39 (1st Cir. 1992) .... 18

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*,
788 F.3d 312 (D.C. Cir. 2015) .... 16

*Dimond v. District of Columbia*,
792 F.2d 179 (D.C. Cir. 1986) .... 17

*EEOC v. Nat'l Childs. Ctr., Inc.*,
146 F.3d 1042 (D.C. Cir. 1998) .... 19

*Foster v. Gueory*,
655 F.2d 1319 (D.C. Cir. 1981) .... 13

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) .... 11, 13, 16, 17

*Ga. River Network v. U.S. Army Corps of Eng'rs*,
334 F. Supp. 2d 1329 (N.D. Ga. 2003) .... 14

*Georgia v. U.S. Army Corps of Eng'rs*,
302 F.3d 1242 (11th Cir. 2002) .... 18

*Hodgson v. United Mine Workers of Am.*,
473 F.2d 118 (D.C. Cir. 1972) .... 12

*IGas Holdings, Inc. v. EPA*,
146 F.4th 1126 (D.C. Cir. 2025) .... 15

*Institutional S'holder Servs., Inc. v. SEC*,
142 F.4th 757 (D.C. Cir. 2025) .... 11, 15, 16

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
591 U.S. 657 (2020) .... 15

*Mass. Sch. of Law v. United States*,
118 F.3d 776 (D.C. Cir. 1997) ........ 19

*Moten v. Bricklayers, Masons & Plasterers Int'l Union*,
543 F.2d 224 (D.C. Cir. 1976) ........ 11

*N. Plains Res. Council v. U.S. Army Corps of Eng'rs*,
454 F. Supp. 3d 985 (D. Mont. 2020) ........ 10

*N. Plains Res. Council v. U.S. Army Corps of Eng'rs*,
460 F. Supp. 3d 1030 (D. Mont. 2020) ........ 10

*N. Plains Res. Council v. U.S. Army Corps of Eng'rs*,
No. CV-19-44-GF-BMM, 2019 WL 5818061 (D. Mont. Nov. 7, 2019) ........ 9, 13

*NAACP v. New York*,
413 U.S. 345 (1973) ........ 11

*Nat. Res. Def. Council v. Costle*,
561 F.2d 904 (D.C. Cir. 1977) ........ 16, 17

*Nat'l Farm Lines v. ICC*,
564 F.2d 381 (10th Cir. 1977) ........ 14, 18

*Nat'l Parks Conservation Ass'n v. EPA*,
759 F.3d 969 (8th Cir. 2014) ........ 18

*Nat'l Wildlife Fed'n v. Burford*,
676 F. Supp. 271 (D.D.C. 1985) ........ 19

*Ohio Valley Env't Coal. v. U.S. Army Corps of Eng'rs*,
243 F.R.D. 253 (S.D. W. Va. 2007) ........ 14

*Perry v. Schwarzenegger*,
630 F.3d 898 (9th Cir. 2011) ........ 19

*Rapanos v. United States*,
547 U.S. 715 (2006) ........ 3

*Sierra Club, Inc. v. Bostick*,
No. CIV-12-742-R, 2013 WL 6858685 (W.D. Okla. Dec. 30, 2013) ........ 9

*Sierra Club v. EPA*,
995 F.2d 1478 (9th Cir. 1993) ........ 14

*South Dakota v. Ubbelohde*,
330 F.3d 1014 (8th Cir. 2003) ........ 18

*Town of Chester v. Laroe Ests., Inc.*,
581 U.S. 433 (2017) .......... 15

*Trbovich v. United Mine Workers*,
404 U.S. 528 (1972) .......... 17

*U.S. Army Corps of Eng'rs v. N. Plains Res. Council*,
591 U.S. 1026 (2020) .......... 10

*United States v. Aerojet Gen. Corp.*,
606 F.3d 1142 (9th Cir. 2010) .......... 11

*United States v. Am. Tel. & Tel. Co.*,
642 F.2d 1285 (D.C. Cir. 1980) .......... 11, 13, 17

*Wilderness Soc'y v. U.S. Forest Serv.*,
630 F.3d 1173 (9th Cir. 2011) (en banc) .......... 14

**Statutes and Other Authorities**

33 U.S.C. § 1344(e) .......... 3, 4

91 Fed. Reg. 768 (Jan. 8, 2026) .......... 1, 4

Fed. R. Civ. P. 24(a)(2) .......... 11, 13, 17

Fed. R. Civ. P. 24(b) .......... 19

Fed. R. Civ. P. 24(b)(1)(B) .......... 19

Fed. R. Civ. P. 24(c) .......... 20

## EXHIBIT INDEX

| | |
|---|---|
| Exhibit 1 | Affidavit of Timothy R. Parr for the American Gas Association |
| Exhibit 2 | Affidavit of Robin Rorick for the American Petroleum Institute |
| Exhibit 3 | Affidavit of Joan Dreskin for the Interstate Natural Gas Association of America |
| Exhibit 4 | Affidavit of Andrew Black for the Liquid Energy Pipeline Association |

# I. INTRODUCTION

On January 8, 2026, the U.S. Army Corps of Engineers ("Corps") reissued Nationwide Permit 12 ("NWP 12"). *See* 91 Fed. Reg. 768 (Jan. 8, 2026). The 2026 NWP 12, like prior iterations of NWP 12, authorizes minor, and typically temporary, discharges "associated with oil or natural gas pipeline activities," provided certain conditions are met. *Id.* at 786.

Plaintiffs Center for Biological Diversity ("CBD") and Alabama Rivers Alliance ("Alabama Rivers") attack the Corps' reissuance of NWP 12, claiming that the Corps failed to comply with the Endangered Species Act ("ESA"), Clean Water Act ("CWA"), Administrative Procedure Act ("APA"), and National Environmental Policy Act ("NEPA"). The record will demonstrate otherwise. The Corps prepared a biological assessment, *id.* at 845, and fully complied with all statutory and regulatory requirements before issuing the final permit in January 2026.

Yet Plaintiffs seek something more, and ask this Court to declare NWP 12 to be in violation of the CWA, ESA, NEPA, and APA, and to vacate the permit in whole or in part. Doc. 1 at 50, *Ala. Rivers All.*, No. 1:26-cv-2623 (filed July 27, 2026); Doc. 1 at 61, *Center for Biological Diversity*, No. 1:26-cv-2571 (filed July 22, 2026). Plaintiffs' suits threaten the NWP 12 Coalition's members' significant interests in NWP 12 and the NWP program as a whole. [1]

The Coalition's members routinely rely on NWP 12 for the for the timely authorization of minor discharges relating to the construction, maintenance and repair of oil and natural gas facilities. These activities have only minimal environmental effects, but are essential to the

[1] The NWP 12 Coalition is comprised of four national energy organizations: the American Gas Association ("AGA"), American Petroleum Institute ("API"), Interstate Natural Gas Association of America ("INGAA"), and Liquid Energy Pipeline Association ("LEPA"). The NWP 12 Coalition moves to intervene in both related cases, which challenge NWP 12 on substantially similar grounds. Both sets of Plaintiffs do not oppose this motion to intervene. The Federal Defendants take no position on the motion.

reliable, safe, and affordable delivery of energy to U.S. consumers, including rural customers, schools, hospitals, and businesses nationwide. Indeed, many Coalition members have public service obligations to deliver energy to their customers, and this demand could not be met without the authorization provided by NWP 12.

If NWP 12 is found unlawful as a result of Plaintiffs' suits, the Coalition's members may be forced to engage in lengthy and expensive individual CWA permit processes to undertake time-sensitive construction, maintenance, and repair activities on pipelines across the country. The delay and expense resulting from those permitting processes would harm not only the Coalition's members, but more importantly, the public—including residences, businesses, schools, hospitals, and government entities— and impede our nation's economy, energy interests, and security.

Accordingly, to protect their members' substantial interests in NWP 12 and to defend against Plaintiffs' wholesale challenges to NWP 12, including their request to have NWP 12 declared unlawful and vacated, the NWP 12 Coalition moves to intervene in this action. The Coalition maintains the same interests here as it did as an intervenor in CBD's challenge to the 2021 version of NWP 12—ensuring the continued availability of NWP 12. *Center for Biological Diversity v. Spellmon*, No. 22-2586 (D.D.C. Apr. 23, 2026) (order granting voluntary dismissal of Plaintiffs' challenge to the 2021 version of NWP 12).

The Coalition is entitled to intervene as a matter of right pursuant to Rule 24(a)(2) because: (1) the motion to intervene is timely; (2) the Coalition has a direct interest in NWP 12, the subject of these related cases; (3) this interest may be impaired or impeded by the disposition of the cases; and (4) the Federal Defendants do not adequately represent the Coalition's interests. Alternatively, the Coalition is entitled to permissive intervention under Rule 24(b). Intervention

will allow the NWP 12 Coalition to defend its unique and critical interests in NWP 12 and will aid the Court in understanding the history, development, and purpose of NWP 12, as well as the merits and implications of Plaintiffs' claims and requested relief on a nationwide scale. The Coalition respectfully requests the Court grant this motion.

## II. STATEMENT OF INTERESTS

The safe and reliable supply of energy requires the construction and maintenance of thousands of miles of linear pipelines.[2] The need to supply natural gas, energy liquids, and other energy sources over long distances to all areas of the country means that pipelines and other linear structures must at times unavoidably cross wetlands and other waters of the U.S.

NWP 12 authorizes minor discharges of dredged or fill material into waters of the U.S. that have "only minimal adverse environmental effects," as provided by Congress in CWA section 404(e), 33 U.S.C. § 1344(e).[3] NWPs authorize these minor discharges without the need for lengthy and expensive individual CWA section 404 permit proceedings.[4] The NWP 12 Coalition's members routinely rely on NWP 12 for the timely authorization of discharges into federally regulated waters associated with maintenance, repair and servicing of oil and gas

---

[2] Steady and reliable energy is essential to our national security. *See* Paul W. Parfomak, Cong. Research Serv., RL33347, Pipeline Safety and Security: Federal Programs 1 (Feb. 18, 2010), https://www.everycrsreport.com/reports/RL33347.html ("CRS Report"). *See also* Paul W. Parfomak, Cong. Research Serv., IN11060, Pipeline Security: Homeland Security Issues in the 116th Congress at 1 (Mar. 1, 2019), https://crsreports.congress.gov/product/pdf/IN/IN11060.

[3] In establishing the NWP program, Congress recognized the importance of the NWP streamlined permitting approach to protect the efficiency and usefulness of the CWA section 404 program, fearing that detailed regulation of such relatively minor activities would undermine overall environmental protection by impairing the Corps' ability to focus on more significant activities.

[4] "The average applicant for an individual permit spends 788 days and $271,596 in completing the process, and the average applicant for a nationwide permit spends 313 days and $28,915—not counting costs of mitigation or design changes." *Rapanos v. United States*, 547 U.S. 715, 721 (2006).

pipelines. The Corps has determined these activities, as conditioned, have only minimal impacts on the aquatic environment.[5]

Review and reissuance of the NWPs through notice and comment rulemaking every five years ensures ongoing confirmation of the sufficiency of these protections and compliance with the statutory requirements. Before the Corps reissued NWP 12 in January 2026, it conducted an environmental analysis to determine whether the individual and cumulative adverse environmental impacts of the activities authorized by the proposed permit are no more than "minimal." 91 Fed. Reg. at 786. The Corps memorialized its CWA section 404(b)(1), NEPA and other national-level environmental analyses in a decision document. *See id.* at 857. The Corps also prepared a biological assessment. *See id.* at 845. The numerous terms and conditions governing NWP 12 ensure compliance with the CWA, NEPA, and the ESA.

**A. American Gas Association**

AGA, founded in 1918, is a national trade association that represents more than 200 local energy companies that deliver and distribute clean natural gas to local residential, commercial, institutional, and industrial customers throughout the country.[6] There are more than 79 million natural gas customers in the U.S., of which 94%—more than 74 million customers—receive their

---

[5] NWP 12 imposes a 1/2 acre limit on the "loss of … waters" for each distinct water body and each separate and distant crossing, requires compliance with 32 general conditions, regional conditions, and any project-specific conditions. 91 Fed. Reg. at 786, 788. Use of NWP 12 requires pre-construction notification to the relevant Corps District in at least three distinct circumstances, including information about all water body crossings along the entire line, thereby allowing the District to further evaluate individual and cumulative effects and add project-specific conditions or require an individual permit. *Id.* at 775–76. The numerous terms governing NWP 12 ensure compliance with the CWA's statutory standard. 33 U.S.C. § 1344(e).

[6] *See* Affidavit of Timothy R. Parr ¶ 3 ("Parr Aff.") (Ex. 1).

gas from AGA members.[7] Today, natural gas meets more than 43% of the country's energy needs.[8]

AGA members rely on NWP 12 to obtain streamlined approvals for gas pipe installation and maintenance projects, which are essential to provide safe, reliable transportation of cleaner burning natural gas to businesses and residences.[9] AGA members must install new natural gas utility lines on a regular basis, both to extend service to new customers and to replace older lines and improve system integrity and pipeline safety.[10] Gas distribution lines and utility-operated intrastate natural gas transmission pipelines can cover many miles and often cross streams, wetlands, or other waters of the U.S.[11] Many of these minor, temporary crossing projects could require individual section 404 permits if NWP 12 was not available.[12]

Federal, State, and public utility commission laws and regulations require AGA member utilities to provide safe, reliable natural gas service to customers at just and reasonable rates, which requires maintaining, improving and expanding natural gas distribution and transmission systems in a cost-effective manner.[13] In light of regulatory requirements to maintain this extensive network of existing distribution mains and transmission pipelines and to construct new mains and pipelines, AGA members routinely rely on and will continue to rely on NWP 12.[14] To

---

[7] *See id.*

[8] *See id.*

[9] *See id.* ¶ 4.

[10] *See id.* ¶ 9.

[11] *See id.* ¶ 5.

[12] *See id.* ¶ 14.

[13] *See id.* ¶ 12.

[14] *See id.* ¶ 14.

protect its interests in the NWP program, AGA filed comments on June 18, 2025, in response to the Corps' proposal to reissue and modify the NWPs.[15]

**B. American Petroleum Institute**

API is a nationwide, non-profit trade association that represents all facets of the natural gas and oil industry, which supports 10.6 million U.S. jobs and nearly 7.4 percent of the U.S. economy.[16] API's approximately 600 member companies include large integrated companies, as well as exploration and production, refining, marketing, pipeline, and marine businesses, and service and supply firms.[17] API was formed in 1919 as a standards-setting organization, and API has developed more than 800 standards to enhance operational and environmental safety, efficiency, and sustainability.[18]

API members engage in exploration, production, and construction projects that routinely involve both state and federal water permitting.[19] API's members rely on an efficient and reasonable permitting process, as provided by the NWPs, including NWP 12, to obtain required CWA approvals for the construction, inspection, maintenance, and repair of pipelines.[20] To protect these significant interests, API filed comments in response to the Corps' 2025 proposal to reissue and modify the NWPs, and has participated in numerous administrative rulemakings involving the NWPs generally.[21]

---

[15] *See id.* ¶ 15.

[16] *See* Affidavit of Robin Rorick ¶ 3 ("Rorick Aff.") (Ex. 2).

[17] *See id.*

[18] *See id.*

[19] *See id.* ¶ 4.

[20] *See id.* ¶¶ 5, 7-9.

[21] *See id.* ¶¶ 10-11.

### C. Interstate Natural Gas Association of America

INGAA is a non-profit trade association representing the vast majority of interstate natural gas transmission pipeline companies operating in the U.S.[22] INGAA's 28 members operate a network of approximately 200,000 miles of pipelines.[23]

INGAA members construct hundreds of miles of new interstate pipelines each year, and undertake maintenance, repair, and/or integrity-related activities along the 200,000 mile network of interstate pipelines annually, as required by regulations under the Pipeline Safety Act.[24] Interstate natural gas pipeline construction and maintenance activities are typically conducted on tight schedules designed to ensure the safety, security, and reliability of the natural gas pipeline network, and to meet the growing demands of natural gas consumers.[25] Many of these activities qualify for use of NWP 12.[26] INGAA members regularly rely on NWPs, including NWP 12, to streamline permitting for their construction and maintenance projects and ensure the timely authorization of activities that have only minimal environmental effects, but that are essential to the reliable, safe and affordable supply of energy to U.S. consumers.[27]

To protect its interests in the NWP program, INGAA filed comments in response to the Corps' 2025 proposal to reissue and modify the NWPs.[28] Based on INGAA members' reliance on NWP 12 and the extent of pipeline construction and maintenance planned ahead, INGAA's members have significant interests at stake in these challenges.

---

[22] *See* Affidavit of Joan Dreskin ¶ 3 ("Dreskin Aff.") (Ex. 3).

[23] *See id.*

[24] *See id.* ¶ 5.

[25] *See id.* ¶ 8.

[26] *See id.* ¶ 7.

[27] *See id.* ¶ 7.

[28] *Id.* ¶ 16.

**D. Liquid Energy Pipeline Association.**

LEPA is a national trade association that represents the interests of owners and operators of liquid energy pipelines across North America and educates the public about the vital role liquid energy pipelines serve in the daily lives of Americans.[29] LEPA members transport more than 90% of the crude oil and refined petroleum products shipped through pipelines in the U.S.[30] LEPA members bring crude oil to the nation's refineries, natural gas liquids to manufacturers and industrial users, jet fuel to airports, and petroleum products to our communities.[31]

LEPA members routinely rely on NWP 12 authorizations for the construction, maintenance, and repair of their liquid pipelines.[32] To protect its interests in the NWP program, LEPA filed comments in response to the Corps' proposal to reissue and modify the NWPs.[33] LEPA members seeking to ensure the integrity and safety of their pipelines through maintenance and repair projects would face significant harms if NWP 12 is found unlawful and Plaintiffs were to obtain the relief they request in these suits.[34] If LEPA members are unable to rely on NWP 12 as a result of this challenge, they would face lengthy delays and additional costs, which could lead to project delays and cancellations and, in turn, negatively impact their customers' available supply and costs of obtaining crude oil and refined petroleum products.[35]

---

[29] *See* Affidavit of Andrew Black ¶ 3 ("Black Aff.") (Ex. 4).

[30] *See id.* ¶ 4.

[31] *See id.*

[32] *See id.* ¶¶ 8-10.

[33] *See id.* ¶ 13.

[34] *See id.* ¶¶ 14-15.

[35] *See id.* ¶¶ 15-16.

### E. Plaintiffs' Complaints

Plaintiffs seek broad relief, asking the Court to declare the Corps' reissuance of NWP 12 in violation of the ESA, NEPA, CWA, APA, and applicable regulations; to remand NWP 12 to the Corps for compliance with NEPA, the CWA, and ESA, and to vacate NWP 12 in whole or in part; and/or set a date certain for completion of ESA section 7 consultation and NEPA review processes. Doc. 1 at 50, *Ala. Rivers All.*, No. 1:26-cv-2623 (filed July 27, 2026); Doc. 1 at 61, *Center for Biological Diversity*, No. 1:26-cv-2571 (filed July 22, 2026).

### F. Prior Challenges to NWP 12.

CBD and other Plaintiffs have brought repeated challenges against successive iterations of NWP 12. And the NWP 12 Coalition has participated in each of the prior cases, dating back to the 2012 version of NWP 12.

For example, Sierra Club filed a similar challenge in the Western District of Oklahoma, asserting that the 2012 NWP 12 was unlawful under the CWA, NEPA, and the APA, and the NWP 12 Coalition intervened. Order, *Sierra Club, Inc. v. Bostick*, No. 5:12-cv-00742-R (W.D. Okla. Aug. 1, 2012), ECF No. 50 (granting intervention). The Coalition's participation in *Bostick* provided the district and appellate courts with the perspective of the nationwide holders of NWP 12. The courts expressly relied on many of the Coalition's arguments in upholding NWP 12 against Sierra Club's suit. *Sierra Club, Inc. v. Bostick*, No. CIV-12-742-R, 2013 WL 6858685, at *9 & n.11, 10, 12 n.16, 13–14, 21 (W.D. Okla. Dec. 30, 2013) (upholding NWP 12), *aff'd*, 787 F.3d 1043 (10th Cir. 2015) ("*Bostick*").

Next, Plaintiffs filed suit in the United States District Court for the District of Montana, arguing that the 2017 NWP 12 was unlawful. The Coalition moved to intervene, and the court granted it permissive intervention. *See N. Plains Res. Council v. U.S. Army Corps of Eng'rs*, No.

CV-19-44-GF-BMM, 2019 WL 5818061, at *2–3 (D. Mont. Nov. 7, 2019). The court granted Plaintiffs' motion for summary judgment, concluding that the Corps failed to conduct programmatic consultation under the ESA when reissuing the 2017 NWP 12. *N. Plains Res. Council v. U.S. Army Corps of Eng'rs*, 454 F. Supp. 3d 985, 989–94, 996 (D. Mont. 2020), *appeal dismissed & remanded*, No. 20-35412, 2021 WL 7368336 (9th Cir. Aug. 11, 2021). As a remedy, the court entered an order vacating NWP 12 in its entirety and remanding the permit to the Corps for further proceedings. *See id.* at 996. The court later narrowed the scope of the vacatur of NWP 12. *N. Plains Res. Council v. U.S. Army Corps of Eng'rs*, 460 F. Supp. 3d 1030, 1049 (D. Mont. 2020), *appeal dismissed & remanded*, No. 20-35412, 2021 WL 7368336 (9th Cir. Aug. 11, 2021).

Federal Defendants and the NWP 12 Coalition appealed the court's orders to the Ninth Circuit, seeking a stay pending appeal, which was granted by the Supreme Court. *N. Plains Res. Council v. U.S. Army Corps of Eng'rs*, No. 20-35414 (9th Cir. May 13, 2020); *U.S. Army Corps of Eng'rs v. N. Plains Res. Council*, 591 U.S. 1026 (2020). The appeals on the merits of the Montana district court's orders were dismissed as moot when NWP 12 was reissued in 2021. Dkt. No. 151, *N. Plains Res. Council v. U.S. Army Corps of Eng'rs*, No. 20-35414 (9th Cir. Aug. 11, 2021); Dkt. No. 187, *N. Plains Res. Council v. U.S. Army Corps of Eng'rs*, No. CV-19-44-GF-BMM (D. Mont. Sept. 29, 2022).

CBD then brought a new challenge to the 2021 reissuance of NWP 12 in the United States District Court for the District of Montana. The NWP 12 Coalition again moved to intervene and was granted intervention. The case was later transferred to this Court. *Center for Biological Diversity v. Spellmon*, No. 21-47 (D. Mont. filed May 3, 2021, transferred to D.D.C. Aug. 18, 2022) ("*CBD*"). On January 8, 2026, the Corps reissued NWP 12. When the 2026 NWP

12 became effective two months later, the parties voluntarily moved to dismiss the action as moot. *Center for Biological Diversity v. Spellmon*, No. 22-2586 (D.D.C. Apr. 23, 2026).

## III. ARGUMENT

### A. The NWP 12 Coalition Is Entitled to Intervene as of Right.

Federal Rule of Civil Procedure 24(a)(2) provides that, "[o]n timely motion, the court *must permit* anyone to intervene" who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2) (emphasis added); *see also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003), *abrogated on other grounds by Institutional S'holder Servs., Inc. v. SEC*, 142 F.4th 757 (D.C. Cir. 2025). In determining whether intervention is appropriate, courts are "guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention." *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010) (internal quotations and citation omitted). The NWP 12 Coalition satisfies each of the requirements under Rule 24(a)(2). Accordingly, the Coalition respectfully requests the Court grant intervention as of right.

#### 1. The Motion to Intervene is Timely.

The timeliness of a motion to intervene "is to be determined from all the circumstances" of the case. *NAACP v. New York*, 413 U.S. 345, 366 (1973). In assessing timeliness, a court considers factors such as (1) the time elapsed since the inception of the suit, (2) the purpose for which intervention is sought, (3) the necessity for intervention as a means of preserving the applicant's rights, and (4) the improbability of prejudice to those already parties in the case. *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980) (citing *Moten v.*

*Bricklayers, Masons & Plasterers Int'l Union*, 543 F.2d 224, 228 (D.C. Cir. 1976); *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 129 (D.C. Cir. 1972)). The Coalition's motion to intervene is timely, and the Coalition plans to work collaboratively and efficiently with the other parties.

Plaintiffs in *Center for Biological Diversity, et al. v. U.S. Army Corps of Eng'rs, et al.* No. 1:26-cv-2571 filed their complaint on July 22, 2026, and Plaintiffs in *Alabama Rivers Alliance, et al. v. U.S. Army Corps of Eng'rs, et al.*, No. 1:26-cv-2623 filed their complaint on July 27, 2026. Federal Defendants' responsive pleadings are due on September 21, 2026, and October 3, 2026, respectively. The NWP 12 Coalition, if granted intervention, proposes to file its responsive pleading on the same schedule as the Federal Defendants, or on such other date as the Court deems appropriate.

The Coalition has proceeded expeditiously. Upon filing of the complaint, the four separate trade associations that comprise the NWP 12 Coalition promptly joined together, as they did in *Northern Plains, Bostick*, and *CBD,* for purposes of intervening to provide a unified industry perspective on the national-level issues involved in this litigation and to defend their members' interests. The litigation is at a very early stage. The Court has not ruled on any dispositive matter. The merits of Plaintiffs' wholesale challenge to NWP 12 only may be decided based on the administrative record, which has not yet been filed with this Court.

If granted intervention, the NWP 12 Coalition is prepared to comply with any established scheduling deadlines negotiated by the parties or imposed by the Court. Under these circumstances, the Coalition's motion is timely and allowing intervention at this early stage in the proceedings will not delay this action or unfairly prejudice the parties.

### 2. The Coalition Has a Direct and Recognized Interest in NWP 12—the Subject of this Action.

To intervene as of right, a movant must have an "interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). "'An intervenor's interest is obvious when [it] asserts a claim to property that is the subject matter of the suit.'" *Fund for Animals*, 322 F.3d at 735 (quoting *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981)). This principle extends to a right under a government permit or approval that is the subject of the legal challenge. A proposed intervenor also shows a legally protectable interest where it stands to "gain or lose by the direct legal operation and effect of the judgment." *Am. Tel. & Tel. Co.*, 642 F.2d at 1292 (internal quotation marks and citation omitted). That includes where the regulated entity benefits from an agency regulation. As this Court has explained, "[t]he 'threatened loss' of [a] favorable action [by an agency] constitutes a 'concrete and imminent injury'" justifying intervention of right. Order, *New York v. EPA*, No. 17-1273 (D.C. Cir. Mar. 14, 2018), Dkt. No. 1722115 (quoting *Fund for Animals*, 322 F.3d at 733).

In *Northern Plains*, the court found that the NWP 12 Coalition "articulated" a protectable interest in the litigation. *N. Plains Res. Council*, 2019 WL 5818061, at *2. The same analysis holds true in this challenge to NWP 12. The Coalition's members are the entities that primarily rely upon NWP 12. These diverse energy companies historically have relied, currently rely, and in the future intend to rely, on NWP 12 to, among other things, authorize minor discharges associated with maintenance, repair and construction of natural gas and oil pipelines. These activities are necessary to provide reliable transportation and delivery of natural gas, oil, and other hydrocarbons to their customers at a reasonable cost and conduct maintenance, inspection

and emergency work under short timeframes set by federal regulation.[36] If repairs cannot be accomplished within required timeframes, the affected portions of the system may be required to shut down, or operate at reduced pressure, with potentially severe environmental and economic consequences as customers must use alternative supplies, if available, or even curtail their operations.[37] An inability to complete these time sensitive maintenance and repair activities could have wide-ranging and serious consequences.

Entities relying on federal permits, such as the Coalition's members' reliance on NWP 12, are routinely granted intervention in actions challenging those permits. *See, e.g.*, *Sierra Club v. EPA*, 995 F.2d 1478, 1482 (9th Cir. 1993) (CWA permit holder entitled to intervene as a matter of right), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc); *Nat'l Farm Lines v. ICC*, 564 F.2d 381, 382 (10th Cir. 1977) (reversing denial of intervention to motor vehicle common carriers based on risk that suit would set aside regulatory scheme that "directly protects their economic interests"); Order, *Nat'l Parks Conservation Ass'n v. Semonite*, No. 1:17-cv-01361 (D.D.C. Aug. 14, 2017) (granting power company intervention as of right in challenge to its CWA Section 404 permit); *Ohio Valley Env't Coal. v. U.S. Army Corps of Eng'rs*, 243 F.R.D. 253 (S.D. W. Va. 2007) (mining companies holding Corps permits permitted to intervene as a matter of right); *Ga. River Network v. U.S. Army Corps of Eng'rs*, 334 F. Supp. 2d 1329 (N.D. Ga. 2003) (holder of Corps permit allowed to intervene in NEPA suit challenging permit); *Cabinet Mountains Wilderness v. Peterson,* 510 F. Supp. 1186 (D.D.C. 1981) (holder of drilling permit allowed to intervene in challenge to Forest Service approval of exploratory plan).

[36] *See* Black Aff. ¶¶ 8-10, 14-16.

[37] *See* Dreskin Aff. ¶ 12; Black Aff. ¶ 16.

The Coalition's substantial interests in NWP 12 are evidenced by their active participation in the development of the NWPs throughout their history, including by filing detailed comments during each reissuance of the NWPs. Most recently, each member of the Coalition submitted comments in response to the Corps' 2025 proposal to reissue and modify the NWPs, which were part of the administrative record before the Corps when it prepared the NWP 12 decision document and reissued the permit. And the Coalition's members have expended significant resources and time to intervene and defend the permit in multiple prior cases challenging earlier iterations of NWP 12.

If Plaintiffs' request for vacatur of NWP 12 is granted, the NWP 12 Coalition's members may be required to obtain individual CWA permits. The Coalition's members and consumers nationwide would be impacted negatively by any requirement to obtain an individual permit for activities the Corps has determined have only minimal impacts on the aquatic environment.[38] Thus, NWP 12 Coalition's members—and ultimately their customers—face a real and present threat of economic injury should Plaintiffs prevail in these lawsuits.

In sum, the NWP 12 Coalition has substantial interests that are directly implicated by Plaintiffs' lawsuits.[39]

---

[38] *See* Black Aff. ¶¶ 14-17; Parr Aff. ¶¶ 19-26; Rorick Aff. ¶¶ 6, 15; Dreskin Aff. ¶¶ 7-8, 19.

[39] The Supreme Court has recognized that intervenors seeking relief broader than or different from relief sought by the existing parties must have standing, *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017), but intervenors that seek the same relief sought by at least one existing party need not do so, *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020). The D.C. Circuit has noted that such "distinction is in tension with some of [this C]ourt's precedent requiring an intervenor to demonstrate Article III standing even if pursuing the same relief as an existing party." *Institutional S'holder Servs., Inc.*, 142 F.4th at 764 n.3; *see Clean Air Council v. EPA*, 181 F.4th 1292, 1300 n.3 (D.C. Cir. 2026); *IGas Holdings, Inc. v. EPA*, 146 F.4th 1126, 1135 n.2 (D.C. Cir. 2025). In any event, the NWP 12 Coalition meets the requirements for standing. The D.C. Circuit has "generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged

### 3. The NWP 12 Coalition's Interests May be Impaired or Impeded by the Disposition of the Litigation.

In evaluating this factor, a court is to look at "the 'practical consequences' of denying intervention." *Fund for Animals*, 322 F.3d at 735 (citing *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977) ("*NRDC*"). Here, it is readily apparent that, if NWP 12 is found unlawful and vacated as the Plaintiffs request, the Coalition's members' interests could be substantially impaired or impeded. An order declaring NWP 12 to be unlawful, remanding the permit to the Corps, and vacating NWP 12 in whole or in part, may not only require the Coalition's members to obtain individual section 404 permits for routine construction and maintenance activities, but also may significantly impair or impede their broader interests.[40]

Collectively, the member companies of the NWP 12 Coalition own, construct, operate, and maintain critical infrastructure that transports fuel and energy. Many of these companies are obligated by federal and/or state regulatory requirements to provide safe and reliable service at a reasonable price.[41] Regulators, Congress, and customers understand that safe and reliable energy service is essential to our nation's security, public health and safety, economic viability, and way of life.[42] The inability to proceed with new construction, upgrades, and maintenance activities

---

in court, and an unfavorable decision would remove the party's benefit." *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 317 (D.C. Cir. 2015), *abrogated on other grounds by Institutional S'holder Servs., Inc.*, 142 F.4th 757). That is the case here. The NWP 12 Coalition's members routinely rely on NWP 12, and a decision vacating or setting aside NWP 12 would harm their interests.

[40] *See* Parr Aff. ¶ 14; Rorick Aff. ¶ 17; Black Aff. ¶¶ 15-16; Dreskin Aff. ¶ 19.

[41] *See* CRS Report at 1.

[42] *See* U.S. Dep't of Homeland Sec., *National Infrastructure Protection Plan* (*NIPP) 2013: Partnering for Critical Infrastructure Security and Resilience* (undated), https://www.dhs.gov/sites/default/files/publications/National-Infrastructure-Protection-Plan-2013-508.pdf.

through a timely, efficient, and cost-effective permitting process would hinder the Coalition's members' ability to accomplish these important missions and directives.[43]

#### 4. The Current Parties Do Not Adequately Represent the NWP 12 Coalition's Interests.

To satisfy the fourth requirement of Rule 24(a)(2), a proposed intervenor must show that its interests *may* not be adequately represented by the existing parties. Fed. R. Civ. P. 24(a)(2) (emphasis added). Only a "minimal" showing is required to establish this element of the legal standard for intervention. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *see also Fund For Animals*, 322 F.3d at 735 (describing the inadequacy of representation requirement as "not onerous." (quoting *Dimond v. District of Columbia,* 792 F.2d 179, 192 (D.C. Cir. 1986))). The movant-intervenor "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee." *Am. Tel. & Tel. Co.*, 642 F.2d at 1293.

Courts in this Circuit and elsewhere routinely recognize that the federal government does not adequately represent the interests of a private party merely because they both support a given government action. Government entities are charged with representing the public interest of the citizens rather than the more narrow interest of a private party. *See Fund for Animals*, 322 F.3d at 737. For that reason, the D.C. Circuit has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Id.* at 736; *see e.g., NRDC*, 561 F.2d at 912 (allowing rubber and chemical companies to intervene in support of EPA because the interest "is more narrow and focussed [sic] than EPA's").

Although the Federal Defendants generally may share the NWP 12 Coalition's desire to defend NWP 12, the broad balance of environmental, administrative, public, and other interests

[43] Parr Aff. ¶¶ 21, 26; Rorick Aff. ¶ 14; Black Aff. ¶¶ 14-16; Dreskin Aff. ¶¶ 12-13.

the government must consider in addressing the claims differs markedly from the Coalition's specific interests in protecting the rights and expectations of their members and other entities that rely on NWP 12.[44] As a result, the positions the Federal Defendants may take during the litigation will neither necessarily align with the positions that the NWP 12 Coalition would take, nor adequately represent the Coalition's interests. *See, e.g.*, *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1025–26 (8th Cir. 2003) (in suit challenging Corps policy to lower reservoir water level, Corps could not adequately represent interests of proposed intervenors—downstream users—because Corps was required to balance the interests of the upstream and downstream users); *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002) ("a federal defendant with a primary interest in the management of a resource" does not have an "interest[] identical to those of an entity with [an] economic interest[] in the use of that resource") (citation omitted); *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44–45 (1st Cir. 1992) ("governmental entity charged by law with representing the public interest of its citizens might shirk its duty were it to advance the narrower interest of a private entity").

The Federal Defendants' primary interests in this case are to defend the Corps' permitting policies and procedures and its administrative resources. The Federal Defendants do not have any particular stake in protecting the Coalition's rights and expectations in NWP 12, and may be constrained by federal policy or litigation strategy from making certain arguments in defense of NWP 12. *See Nat'l Parks Conservation Ass'n v. EPA*, 759 F.3d 969, 977 (8th Cir. 2014) (recognizing that the Government may be precluded from "advanc[ing] the narrower interests of a private entity").

[44] *See Nat'l Farm Lines*, 564 F.2d at 383 (recognizing the inadequacy of government representation of the interests of private trade associations whose members had a direct economic interest in preserving a statute that government did not have).

Lastly, the Coalition may have an interest in appealing an adverse decision that the Federal Defendants may not share. Given the genuine potential for divergence of interests, it is clear that representation by the Federal Defendants may be inadequate and, as a result, the Coalition is entitled to intervene as of right.

### B. Alternatively, the NWP 12 Coalition Should Be Granted Permissive Intervention.

Although the Coalition is entitled to intervene as of right, in the alternative, the Court should permit the NWP 12 Coalition to intervene under Rule 24(b)(1)(B). Under Rule 24(b)(1)(B), the Court may exercise its discretion to permit intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see also Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011). The Court has broad discretion to grant permissive intervention. *See EEOC v. Nat'l Childs. Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998); *Mass. Sch. of Law v. United States*, 118 F.3d 776, 782 (D.C. Cir. 1997); *Nat'l Wildlife Fed'n v. Burford*, 676 F. Supp. 271 (D.D.C. 1985).

In determining whether to grant permissive intervention, courts must consider whether the proposed intervention would "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b); *see also Arizona v. California*, 460 U.S. 605, 615 (1983), *decision supplemented*, 466 U.S. 144 (1984) (granting intervention based on the absence of any showing that the rights of the original parties would be prejudiced or the litigation unduly delayed).

Permissive intervention is warranted here. Plaintiffs seek to have NWP 12 declared unlawful and vacated. The defenses the NWP 12 Coalition would assert would be based on the administrative record to be filed by the Federal Defendants, present questions of law and fact in common with the underlying suit and respond directly to Plaintiffs' claims. Moreover, given the

unique perspective of the NWP 12 Coalition in light of their nationwide reliance on NWP 12, and their longstanding involvement in the NWP program and defense of NWP 12, in particular, the Coalition's participation would aid or enhance the Court's understanding of the history, development, purpose, and use of NWP 12. As with *CBD, Northern Plains,* and *Bostick*, the NWP 12 Coalition is uniquely positioned to assist the Court in considering the merits and implications of Plaintiffs' claims and requested relief, and thereby assist in the equitable resolution of this action.

Finally, the NWP 12 Coalition's motion to intervene is timely. If granted intervention, the NWP 12 Coalition would participate on the same schedule as the existing parties.

Taken together, these considerations clearly support the NWP 12 Coalition's alternative request for permission to intervene under Rule 24(b)(1)(B).

### C. The Requirements of Rule 24(c) Are Satisfied.

A motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Through this memorandum, the NWP 12 Coalition has stated its grounds for intervention.

Plaintiffs in *Center for Biological Diversity, et al. v. U.S. Army Corps of Engineers, et al.* No. 1:26-cv-2571 filed their complaint on July 22, 2026, and Plaintiffs in *Alabama Rivers Alliance, et al. v. U.S. Army Corps of Engineers, et al.*, No. 1:26-cv-2623 filed their complaint on July 27, 2026. Federal Defendants' responsive pleadings are due on September 21, 2026, and October 3, 2026, respectively. The NWP 12 Coalition, if granted intervention, proposes to file its responsive pleading on the same schedule as the Federal Defendants, or on such other date as the Court deems appropriate.

## IV. CONCLUSION

The NWP 12 Coalition respectfully requests that this Court grant its motion to intervene as of right under Rule 24(a)(2), or alternatively, permissive intervention under Rule 24(b)(1)(B).

Date: September 11, 2026

Respectfully submitted,

/s/ Karma B. Brown
Deidre G. Duncan (D.C. Bar No. 461548)
Karma B. Brown (D.C. Bar No. 479774)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 955-1500
dduncan@hunton.com
kbbrown@hunton.com

*Counsel for Defendant-Intervenors American Gas Association, American Petroleum Institute, Interstate Natural Gas Association of America, and Liquid Energy Pipeline Association*

# CERTIFICATE OF COMPLIANCE

I certify that this Memorandum in Support of Motion to Intervene by American Gas Association, American Petroleum Institute, Interstate Natural Gas Association of America, and Liquid Energy Pipeline Association complies with the requirements of LCvR 7(e) and contains 6,179 words, according to the word count calculated by Microsoft Word.

/s/ Karma B. Brown
Karma B. Brown

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record. I further certify that on September 11, 2026, I mailed the foregoing document to UNITED STATES ARMY CORPS OF ENGINEERS, 441 G Street, N.W. Washington, DC 20314 and LIEUTENANT GENERAL WILLIAM H. GRAHAM, JR., 441 G Street, N.W. Washington, DC 20314, by first-class mail, in compliance with Fed. R. Civ. P. 5(b)(2)(C).

/s/ Karma B. Brown
Karma B. Brown